DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

SFR SERVICES, LLC a/a/o Wild Oak Bay Owner Association, Inc.,

Appellant,

v.

AMERICAN COASTAL INSURANCE COMPANY,

Appellee.

No. 2D2024-1947

_____

July 22, 2026

Appeal from the Circuit Court for Manatee County; Edward Nicholas, Judge.

Melissa A. Giasi of Giasi Law, P.A., Tampa, for Appellant.

Patrick M. Chidnese and Frieda C. Lindroth of Bickford & Chidnese, LLP, Tampa, for Appellee.

BLACK, Judge.

SFR Services, LLC, under an assignment of benefits from Wild Oak Bay Owners Association, Inc., appeals from the final summary judgment in favor of American Coastal Insurance Company. SFR challenges the trial court's rulings as to the promptness of Wild Oak Bay's notice to American Coastal of hurricane damage and as to the prejudice showing required of American Coastal if Wild Oak Bay's notice was not prompt.

SFR also challenges the court's order striking SFR's acceptance of American Coastal's settlement offer. We affirm the final summary judgment insofar as it subsumes the order striking acceptance of the settlement offer. We otherwise reverse the final summary judgment and remand for further proceedings.

I. Background

The cause of action in this case arose from Wild Oak Bay's claim of damage allegedly caused by Hurricane Irma. Hurricane Irma made landfall September 10, 2017. Wild Oak Bay filed its claim with American Coastal on July 29, 2020—two years, ten months, and nineteen days after Hurricane Irma's landfall. In August 2020 Wild Oak Bay assigned its benefits under its insurance policy with American Coastal to SFR, and SFR subsequently submitted to American Coastal an estimate of repairs including roof replacements for forty-eight buildings. In March 2021 SFR brought suit against American Coastal for breach of contract, alleging that American Coastal had refused to pay for all covered damages to the insured property.

Two years into litigation, American Coastal filed the subject motion for summary judgment. In its motion, American Coastal argued that Wild Oak Bay had failed to provide prompt notice of its claim as a matter of law and that the delay in notice along with repairs performed prior to reporting the claim prejudiced American Coastal's investigation such that American Coastal was unable to determine the cause and extent of the damages claimed.

The relevant provision of Wild Oak Bay's insurance policy, Duties in the Event of Loss or Damage, provides that pursuant to section 627.70132, Florida Statutes (2016), "loss or damage caused by the peril of windstorm or hurricane is not covered unless notice of the claim . . . is

2

provided to [American Coastal] in accordance with the policy conditions, within three (3) years from the date the hurricane made landfall or the windstorm caused damage" and that "[i]n the case of a loss to covered property, [American Coastal] ha[s] no duty to provide coverage under this Policy *if the failure to comply with the following [listed] duties is prejudicial to [American Coastal].*" (Emphasis added.) The listed duties include that Wild Oak Bay "give [American Coastal] prompt notice of the loss or damage," including a description of the property, and that Wild Oak Bay, "[a]s soon as possible, give [American Coastal] a description of how, when and where the loss or damage occurred." Also included in the list of duties is cooperation in the investigation of the claim.

On February 9, 2024, the trial court granted summary judgment in favor of American Coastal. The court found that Wild Oak Bay had failed to provide prompt notice of the claim. The court then found that American Coastal was prejudiced in its ability to respond to and properly evaluate the claim: "The bottom line here is that there is nothing in the record that, in any meaningful way, overcomes the clear and obvious prejudice as a result of [Wild Oak Bay's] 1053-day delay."

On appeal, SFR contends that the trial court should have denied American Coastal's motion for summary judgment because the factual issues of timely notice and prejudice to American Coastal remained in dispute.

II. Standards

Our review of both the final summary judgment and the trial court's interpretation of the insurance policy is de novo. *People's Tr. Ins. v. Abraham*, 410 So. 3d 1280, 1283 (Fla. 2d DCA 2025). Pursuant to Florida Rule of Civil Procedure 1.510 the "test for the existence of a genuine factual dispute is whether 'the evidence is such that a

3

reasonable jury could return a verdict for the nonmoving party.' " *You Restorations LLC v. First Protective Ins.*, 417 So. 3d 358, 364 (Fla. 4th DCA 2025) (quoting *In re Amends. to Fla. Rule of Civ. Proc. 1.510*, 317 So. 3d 72, 75 (Fla. 2021)).  The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 365 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

Specific to the basis for summary judgment in this case, "[t]he Supreme Court of Florida has set forth a two-step process to determine whether an insurance company may deny an insured's claim on the ground that the insured failed to give the insurance company timely notice of the claim as required by an insurance policy."  *Bensen v. Privilege Underwriters Reciprocal Exch.*, 401 So. 3d 390, 395 (Fla. 6th DCA 2023).  "The first step in the analysis is to determine whether or not the notice was timely given."  *LoBello v. State Farm Fla. Ins.*, 152 So. 3d 595, 599 (Fla. 2d DCA 2014).  If the notice was prompt, the analysis concludes.  *Id.*  If the notice was not prompt, the analysis proceeds to the second step: determining whether the insurance company was prejudiced as a result of the untimely notice.  *Bensen*, 401 So. 3d at 395 (citing *LoBello*, 152 So. 3d at 599).

III.  Notice

SFR contends that whether Wild Oak Bay provided prompt notice to American Coastal is a jury question.  It argues that American Coastal did not identify any record evidence that Wild Oak Bay knew of the loss or damage earlier than the notice to American Coastal and that the record evidence instead established that when Wild Oak Bay became aware of the damage was a disputed fact.  We cannot agree.

4

While it is the general rule that determining whether the insured gave timely notice to the insurer is a question to be resolved by the trier of fact, there are exceptions. *Rodriguez v. Avatar Prop. & Cas. Ins.*, 290 So. 3d 560, 564 (Fla. 2d DCA 2020) (citing *Himmel v. Avatar Prop. & Cas. Ins.*, 257 So. 3d 488, 492 (Fla. 4th DCA 2018)); *accord Guzman v. So. Fidelity Ins.*, 332 So. 3d 67, 71 (Fla. 2d DCA 2021); *LoBello*, 152 So. 3d at 600. " '[I]f the undisputed evidence will not support a finding that the insured gave notice to the insurer as soon as practicable,' then the court may decide the issue as a matter of law." *Sec. First Ins. v. Visca*, 387 So. 3d 313, 318 (Fla. 4th DCA 2024) (quoting *Lobello*, 152 So. 3d at 600).

The two-step analysis for determining whether an insured's failure to promptly report a claim results in the denial of coverage begins by considering the language of the insurance policy at issue. *Laquer v. Citizens Prop. Ins.*, 167 So. 3d 470, 474 (Fla. 3d DCA 2015). Here, there is no definition of prompt or prompt notice in Wild Oak Bay's insurance policy. "It is well settled, however, that 'prompt' and other comparable phrases, like 'immediate' and 'as soon as practicable,' do not require instantaneous notice." *Id.* (citing *Cont'l Cas. Co. v. Shoffstall*, 198 So. 2d 654, 656 (Fla. 2d DCA 1967)); *accord Guzman*, 332 So. 3d at 70. "[N]otice is necessary 'when there has been an occurrence that should lead a reasonable and prudent [person] to believe that a claim for damages would arise.' " *Visca*, 387 So. 3d at 318 (second alteration in original) (quoting *Laquer*, 167 So. 3d at 474).

We recognize that "the duty to notify is not per se triggered when the loss initially occurs, or when the insured first discovers damage to their property." *Id.* However, a "delay in notice is not excused simply because the insured believed the damage was not severe enough to justify filing a claim." *Id.* And "where an insured allegedly sustained

5

property damage due to a hurricane, Florida courts have often found that the insured's initial discovery of that damage triggered the duty to notify, at least when the damage first appeared shortly after the storm." *Id.*

Here, the property manager for Wild Oak Bay at the time Hurricane Irma made landfall testified in deposition that as to "Wild Oak Bay and all the others," there were trees down, fences down, "[s]ome concrete tiles loose on some associations," and "[s]hingles blown off of other associations." He testified that he saw loose tiles and areas where tiles had slipped, as well as "basic cracked tiles maybe from branches hitting the roof." The minutes from the November 2017 Wild Oak Bay meeting include the following notations: "Hurricane damage was light—mainly clean up of tree debris"; "nine (9) roof leaks"; and "mainly flashing leaks" which were "[p]robably due to wind driven rain."

Undisputed evidence established that roof tiles and shingles had been displaced, damaged, or blown off roofs immediately following the hurricane and that Wild Oak Bay suspected wind-driven rain had caused the flashing leaks that had been reported as of November 2017, two months after Hurricane Irma. This evidence is sufficient for a reasonable person to believe that a claim would arise. *See LoBello*, 152 So. 3d at 599 (quoting *Ideal Mut. Ins. v. Waldrep*, 400 So. 2d 782, 785 (Fla. 3d DCA 1981)); *SFR Servs., LLC v. Hartford Ins. Co. of the Midwest*, 609 F. Supp. 3d 1287, 1291-92 (S.D. Fla. 2022); *cf. Cordero v. Fla. Ins. Guar. Ass'n*, 354 So. 3d 1150, 1154 (Fla. 2d DCA 2023) ("Absent any evidence that the supposed triggering event would cause a reasonable insured to believe a policy award was likely, [the insurer] was not entitled to summary judgment on the issue of untimely notice."). And it "implicates a potential claim" despite not knowing "the full extent of the damages." *See 1500 Coral Towers Condo. Ass'n v. Citizens Prop. Ins.*, 112 So. 3d

541, 543-44 (Fla. 3d DCA 2013) (citing *Kendall Lakes Towers Condo. Ass'n v. Pacific Ins.*, No. 10–24310–CIV, 2012 WL 266438, *4 (S.D. Fla. Jan. 30, 2012)).[1] We agree with the trial court that there is no factual dispute as to notice; Wild Oak Bay did not provide prompt notice of its claim as was required by the insurance policy.

IV. Prejudice

Without conceding that Wild Oak Bay's notice was not prompt, SFR argues on appeal that the trial court erred by applying a presumption of prejudice in the second step of the two-step process. SFR contends that under the insurance policy language American Coastal was required to prove it was prejudiced by the failure to provide prompt notice and was not entitled to a presumption of prejudice. SFR argues that although the trial court purported to require American Coastal to prove prejudice, it applied a presumption of prejudice and determined that SFR had not overcome that presumption.

Like the first step, the second step of the analysis begins with the language of the insurance policy at issue. *Laquer*, 167 So. 3d at 474. Wild Oak Bay's policy language provides that American Coastal has "no duty to provide coverage under this Policy *if the failure to comply with the following [listed] duties is prejudicial to us.*" (Emphasis added.) This language is identical to the policy language—including prompt notice as a listed duty—in *Perez v. Citizens Property Insurance Co.*, 345 So. 3d 893 (Fla. 4th DCA 2022), and *Arce v. Citizens Property Insurance Co.*, 388 So. 3d 205 (Fla. 3d DCA 2024). However, the *Perez* and *Arce* courts reached

---

[1] SFR's reliance on *Bensen* is misplaced. In *Bensen*, "[t]here [was] no evidence that, prior to January 2020 [when Bensen made his claim], anyone told Bensen that the damage to his roof may have been caused by Hurricane Irma." 401 So. 3d at 396.

7

conflicting conclusions on the issue of whether there is a presumption of prejudice under this policy language.[2]

In *Perez*, the Fourth District held that "th[is] policy language places the burden on the insurer to prove prejudice." 345 So. 3d at 896; *see also Godfrey v. People's Tr. Ins.*, 338 So. 3d 908, 909 (Fla. 4th DCA 2022) ("The People's Trust policy expressly requires a showing of prejudice by stating that the insurer had 'no duty to provide coverage under this policy if the failure to comply with the following duties is *prejudicial* to us.' "). In *Arce*, the Third District held that there is no " 'policy language exception' to the presumption of prejudice that arises when an insured fails to promptly notify the insurer of a claim." 388 So. 3d at 212.[3]

In this case, the trial court purported to follow *Perez*, writing: "Generally, if the insured breaches its duty to provide prompt notice, there is a rebuttable presumption of prejudice to the insurer. Here, however, the policy's language requires that American Coastal set forth evidence that the failure to promptly report the claim actually prejudiced its investigation." Yet in the next paragraph the court wrote, "Prejudice is properly resolved on summary judgment where an insured fails to present evidence sufficient to rebut the presumption." Citing *1500 Coral Towers* for the proposition that the presumption of prejudice must be

---

[2] We note that the First District and Sixth District have reiterated the general rule that prejudice to the insurer is presumed but have done so without providing the language of the policy. *See Homeowners Choice Prop. & Cas. Ins. v. Clark*, 410 So. 3d 99, 105 (Fla. 1st DCA), *review denied sub nom.*, *Clark v. Homeowner's Choice Prop. & Cas. Ins.*, No. SC2025-0871, 2025 WL 2925370 (Fla. Oct. 15, 2025); *Bensen*, 401 So. 3d at 395.

[3] *See also Calderon v. Citizens Prop. Ins.*, 393 So. 3d 754 (Fla. 3d DCA 2024) (certifying conflict with *Perez*).

overcome by the insured, the court determined that "there is nothing in the record that, in any meaningful way, overcomes the clear and obvious prejudice as a result of the [Wild Oak Bay's] 1053-day delay."

It is evident that the trial court applied a presumption of prejudice in favor of American Coastal in its analysis. SFR argues that this was error, that the trial court was correct in stating that the policy language requires American Coastal to prove prejudice, and that whether American Coastal was prejudiced by Wild Oak Bay's failure to provide prompt notice remains a disputed question of fact. We agree, and we certify conflict with the Third District's decision in *Arce*.

"[T]he rights and obligations of the parties under an insurance policy are governed by contract law since they arose out of an insurance contract." *Lumbermens Mut. Cas. Co. v. August*, 530 So. 2d 293, 295 (Fla. 1988); *see also State Farm Mut. Auto. Ins. v. Curran*, 135 So. 3d 1071, 1084 (Fla. 2014) (Polston, C.J., dissenting) (stating that duties are defined "first, and most importantly," by the policy language). Courts have long recognized that they "are not authorized to rewrite contracts." *See, e.g.*, *Nat'l Gypsum Co. v. Travelers Indem. Co.*, 417 So. 2d 254, 256 (Fla. 1982) (citing *Home Dev. Co. v. Bursani*, 178 So. 2d 113, 114 (Fla. 1965)). And "insurance contracts are construed according to their plain meaning." *Wash. Nat'l Ins. v. Ruderman*, 117 So. 3d 943, 950 (Fla. 2013) (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)). "The scope and extent of insurance coverage is determined by the language of the insurance policy. Thus, the policy's text is paramount and must be the starting point of [the court's] analysis." *Catalina W. Homeowners Ass'n v. First Cmty. Ins.*, 418 So. 3d 689, 694 (Fla. 3d DCA 2025) (quoting *Fojon v. Ascendant Com. Ins.*, 393 So. 3d 806, 810 (Fla. 3d DCA 2024)). Applying a general rule "that

9

provides no deference for what th[e] policies might actually say . . . contravenes law requiring courts to enforce the plain language of unambiguous contracts." *Curran*, 135 So. 3d at 1087 (Polston, C.J., dissenting). It also ignores that parties are free to contract around the law, including any presumptions, "so long as there is nothing void as to public policy or statutory law about such a contract." *See Green v. Life & Health of Am.*, 704 So. 2d 1386, 1390 (Fla. 1998) (quoting *King v. Allstate Ins.*, 906 F.2d 1537, 1540 (11th Cir. 1990)); *see also Okeechobee Resorts, LLC v. E Z Cash Pawn, Inc.*, 145 So. 3d 989, 993 (Fla. 4th DCA 2014) ("Contracts are voluntary undertakings, and contracting parties are free to bargain for—and specify—the terms and conditions of their agreement."); *cf. Bartolotta v. Bartolotta*, 380 So. 3d 535, 537 (Fla. 2d DCA 2024) ("[P]arties are free to enter [a contract] that may impose obligations or restrictions that would not otherwise be imposed under Florida law.").

"Provisions in . . . contracts cannot be viewed in isolation from the full textual context of which they are a part." *Allstate Ins. v. Revival Chiropractic, LLC*, 385 So. 3d 107, 113 (Fla. 2024). While the common law affords a presumption of prejudice for untimely notice, other duties placed on the insured carry no presumption. *See, e.g.*, *Bankers Ins. v. Macias*, 475 So. 2d 1216, 1218 (Fla. 1985) ("In a breach of cooperation clause case, however, the insurer must show a material failure to cooperate which substantially prejudiced the insurer.").[4] Here, the

---

[4] The *Arce* opinion relies in part on *Macias* to reach its conclusion. The *Macias* opinion states that "different presumptions arise depending on which duty [in an insurance policy] has been breached." 475 So. 2d at 1217-18. And the policy at issue in *Macias* designated the notice of accident as a condition precedent to a claim. *Id.* at 1218. "Such a condition can be avoided by a party alleging and showing that the

prompt notice provision is subparagraph (a)(2) of a multipart paragraph that includes duties to which no common law presumption applies. All of the duties fall under the same prefatory policy statement: "In the case of a loss to covered property, [American Coastal] ha[s] no duty to provide coverage under this Policy *if the failure to comply with the following [listed] duties is prejudicial to [American Coastal]*." (Emphasis added.) The structure of the clause makes it apparent that all subparagraphs are to be treated the same. *See Broadmoor Enters., LLC v. Super Heat & Air, LLC*, 432 So. 3d 609, 613 (Fla. 2d DCA 2026); *see also Scherer v. Volusia Cnty. Dept. of Corr.*, 171 So. 3d 135, 138 (Fla. 1st DCA 2015) ("All subparagraphs (also referred to as sub-subsections) of paragraph (1)(b) should be read in pari materia . . . because of the structure of the text . . . ."); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 156 (2012) ("[M]aterial contained in unindented text relates to all the following . . . indented subparts."). The failure to comply with *any* of the listed duties relieves American Coastal of providing coverage *if* American Coastal is prejudiced.[5] The policy language does not differentiate between prompt notice and the other

insurance carrier was not prejudiced by noncompliance with the condition." *Id.* "A failure to cooperate clause, on the other hand, sometimes relieves an insurer of liability. A failure to cooperate is a condition subsequent and it is proper to place the burden of showing prejudice on the insurer." *Id.* We recognize that the *Macias* opinion contains no qualifying language, but there is also no reference to policy language addressing prejudice. Rather, the opinion indicates that the duty to provide notice was independent of any duty to cooperate. That is not the case here. Both duties—prompt notice and cooperation—fall under the same Duties in the Event of Loss or Damage provision.

[5] "If" is commonly understood to mean "in the event that." *If, The American Heritage Dictionary of the English Language* (5th ed. 2022).

listed duties.  The language sets forth a contingency: *if* American Coastal is prejudiced, no coverage is extended.

By including prompt notice with duties to which no common law presumption applies, American Coastal removed any presumption of prejudice for the failure to provide prompt notice.[6]  We conclude, as the Fourth District has, that the language at issue "places the burden on the insurer to prove prejudice" such that "an express showing of prejudice by the insurer" is required.  *See* 345 So. 3d at 896.  It would be rewriting the contract to apply a presumption to one subparagraph but not the others where the language of the prefatory statement unambiguously applies to all subparagraphs and clearly conditions denial of coverage on proving prejudice.  *But cf. Arce*, 388 So. 3d at 213 n.12.

"[I]insurance contracts are not truly consensual; they involve forfeitures; and allowing recovery is the more equitable course of action and furthers the reasonable expectations of those who purchase insurance."  *Nat'l Gypsum*, 417 So. 2d at 256 (citing *Brakeman v. Potomac Ins.*, 371 A.2d 193, 196 (Pa. 1977)).  "Policy provisions that tend to limit or avoid liability are interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy, and exclusions to coverage are construed even more strictly against the insurer than

---

[6] Where the policy language dictates otherwise, we cannot agree with the *Arce* court that it is "counterintuitive that [the insurer] should somehow lose the otherwise applicable presumption simply because [it] has chosen to incorporate into its policy the common law requirement that, to deny coverage, [the insurer] must be prejudiced."  388 So. 3d at 212.  The Third District views the language "as entirely congruent with . . . the longstanding common law explicated by the Florida Supreme Court."  *Id.*  We agree that the policy language incorporates a prejudice requirement.  However, we disagree that the presumption of prejudice has been incorporated.

12

coverage clauses." *Walker v. Bankers Life & Cas. Co.*, 398 So. 3d 569, 572 (Fla. 2d DCA 2024) (quoting *Flores v. Allstate Ins.*, 819 So. 2d 740, 744 (Fla. 2002)). The language of the Duties in the Event of Loss or Damages provision makes it apparent that the common law prejudice presumption was not incorporated into the insurance policy, and the parties agreed to the language relieving American Coastal of providing coverage if American Coastal establishes prejudice. *See Green*, 704 So. 2d at 1391 ("[W]e cannot ignore the fact that Life & Health chose to draft and incorporate a different 'knowledge and belief' standard in its application . . . . In the final analysis, this contract, by its own terms, established a lesser knowledge standard than that required by section 627.409. The parties agreed to that lesser standard, a knowledge requirement inserted by the drafter of the agreement, Life & Health.").

SFR further contends that American Coastal did not prove prejudice or that, alternatively, SFR overcame any presumption of prejudice. Like the question of prompt notice, whether the insurer is prejudiced is generally a question of fact. *See Perez*, 345 So. 3d at 896 (quoting *Arguello v. People's Tr. Ins.*, 315 So. 3d 35, 42 (Fla. 4th DCA 2021)).

In granting summary judgment, the court noted that SFR's expert engineer's inspection took place four years after Hurricane Irma and likened it to the expert affidavit in *Perez v. Citizens Property Insurance Corp.*, 343 So. 3d 140, 143 (Fla. 3d DCA 2022), which the Third District found did not rebut the presumption of prejudice resulting from the failure to provide prompt notice of the claim. Here, the court found the expert engineer's opinion "to be unsupported generalizations, void of any meaningful quantitative analysis, conclusory, inconsistent and overly simplistic." Further, the court found that the expert's "suggestion that

he can distinguish between roof damage cause[d] by one hurricane versus another, or one significant wind event versus another, is, frankly, preposterous."  The court did not address *Stark v. State Farm Florida Insurance Co.*, 95 So. 3d 285, 288 (Fla. 4th DCA 2012), wherein the Fourth District determined that the presumption of prejudice had been overcome based on inspections of the property years after the hurricane.  *See also Shapiro v. First Protective Ins.*, 359 So. 3d 777, 782 (Fla. 4th DCA 2023) ("[T]he homeowners' engineer's affidavit created issues of material fact as to whether the homeowners could overcome the presumed prejudice applicable to the late notice provided to the insurer.").

The report prepared by SFR's expert provides that roofs in Wild Oak Bay were inspected between October 18, 2021, and October 22, 2021.  The expert did not physically go up on the roofs himself; rather, the expert's firm's residential roof inspector went up on the roofs and live streamed the inspection to the expert, with the expert being able to speak to the inspector and request specific angles.[7]  "[A] total of fifty-five duplex style residential buildings and one carport" were inspected.  The "field visit included visual inspection of readily observable surfaces, collection of digital evidence, and rotation of roof tiles to determine attachment integrity."  SFR's expert used "weather data, damage pattern, statements by an eyewitness, wind velocity, [and] pressure calculations" to reach his

---

[7] The expert testified that it was not necessary for him to physically inspect the property to be able to render an opinion on whether Hurricane Irma caused damage to the roofs.  When asked whether he observed wind damage caused by Hurricane Irma to the roofing structures, the expert testified: "Absolutely.  Every roof in the development had some Irma damage."

14

conclusion. The data reviewed included National Oceanic and Atmospheric Administration (NOAA) data specific to Hurricane Irma, the eye of which passed fifty miles from Wild Oak Bay. The expert testified that winds of seventy miles per hour were experienced at the property during Hurricane Irma, that "tiles start to lift between nine and ten pounds [of wind pressure] per square foot," and that the lowest pressure experienced in Wild Oak Bay was "twenty-six [pounds per square foot], almost three times the pressure needed to cause the damage" he saw.[8]

The expert ruled out damage from Hurricane Eta in 2020 because it took a different strike angle and would have resulted in a dissimilar damage pattern: "Each storm is unique to each group of buildings, and the pattern damage on these buildings was not from an Eta strike angle. It was obvious it was from an Irma strike angle."

SFR's expert's affidavit in opposition to the motion for summary judgment sets forth much of the above. The affidavit specifically includes the opinion that within a reasonable degree of engineering certainty, Hurricane Irma caused the visible damage to the roofs in Wild Oak Bay. The expert ultimately concluded in the report, "A review of the damage to the property, ASCE 7-10 velocity pressure calculations, and historic

---

[8] The expert testified that "[t]he passage of time actually helps [the] investigation" because "[t]he patina builds up":

> If [someone] broke a tile the day after Irma, it would be really difficult to distinguish that between Irma damage. But if you wait a thousand days later and break a tile, it's going to have a different appearance, and you're easily able to exclude that damage. So the passage of time is not prejudicial. It actually helps you aid [sic] in your opinions regarding the cause of the damage.

American Coastal's field adjuster inspected the property and was "unable to determine the date of the repairs or whether they were performed in connection with Hurricane Irma."

NOAA weather data support the opinion that the reported date of loss is the single storm event that caused the roof and interior finish damage documented during the site inspection."

It is apparent that the court improperly weighed the evidence when it found the expert engineer's opinion to be "void of any meaningful quantitative analysis," "overly simplistic," and "preposterous." The function of the court is not to make credibility determinations or weigh the evidence at summary judgment. *See Lassiter v. Citizens Prop. Ins.*, 386 So. 3d 646, 651 (Fla. 2d DCA 2024); *see also Petro Welt Trading Ges.m.b.H. v. Brinkmann*, 432 So. 3d 1086, 1094 (Fla. 6th DCA 2024) (concluding that criticism of expert's report as "not the result of an independent investigation" was inappropriate at summary judgment stage). "[A] motion for summary judgment is not a trial by affidavit or deposition." *Lassiter*, 386 So. 3d at 652 (alteration in original) (quoting *Clampitt v. Wick*, 320 So. 3d 826, 833 (Fla. 2d DCA 2021)). Nonetheless, "[w]e recognize that the trial court is not required to consider affidavits that are not based upon personal knowledge or are devoid of evidentiary support." *McNabb v. Bay Vill. Club Condo. Ass'n*, 216 So. 3d 688, 691 (Fla. 2d DCA 2017). Here, however, the expert explained the circumstances allowing him to make his observations, and his opinion was premised on his personal knowledge from the inspection of the areas of roofs that had not been repaired and on scientific data and analysis, none of which was called into doubt as unreliable. *Cf. Gonzalez v. Citizens Prop. Ins.*, 273 So. 3d 1031, 1037 (Fla. 3d DCA 2019).

On this record, even if this court were to agree with the *Arce* opinion that a presumption of prejudice applies regardless of the contingent language in the policy, SFR's evidence overcame that presumption. "[P]rejudice in the context of late notice generally means

16

the insurer was deprived of the opportunity to investigate the facts of the claim and determine the cause and the extent of the damage." *Bryan-Wilson v. Universal Prop. & Cas. Ins.*, 426 So. 3d 889, 895 (Fla. 4th DCA 2025). The expert expressly stated that his investigation was not prejudiced by the time lapse or by the repaired areas because he excluded the repairs in determining the cause of the damage.

V. Settlement Offer

On November 28, 2023, well after the lawsuit had been filed, the trial court ordered that American Coastal would have ten business days to respond to the February 25, 2020, notice of intent to initiate litigation that SFR had served on American Coastal pursuant to section 627.7152(9)(a), Florida Statutes (2019). The court fashioned this remedy as a consequence for SFR's failure to comply with the statutory requirement that the notice of intent to initiate litigation be served "at least [ten] business days before filing suit, but not before the insurer has made a determination of coverage under [section] 627.70131." *See* § 627.7152(9)(a). American Coastal did not challenge that order, and it subsequently complied with the order by issuing a "presuit settlement offer" pursuant to section 627.7152(9)(b). SFR did not accept American Coastal's settlement offer before the court granted summary judgment; it was not until February 24, 2024, fifteen days after rendition of the order granting summary judgment and one day after American Coastal moved for entry of final judgment and for attorney's fees, that SFR filed the notice of acceptance of settlement offer.

American Coastal moved to strike SFR's acceptance of the settlement offer. Following a hearing, the trial court granted the motion, finding that relevant case law precludes acceptance of a settlement offer

17

after entry of summary judgment or jury verdict. The court then rendered final judgment in favor of American Coastal.

On appeal, SFR contends that its acceptance created a binding settlement contract because section 627.7152(9) contains no deadline for acceptance of a settlement offer and American Coastal neither withdrew its offer nor set a deadline for SFR to accept the offer. On the facts of this case, we conclude that the trial court correctly determined that SFR's acceptance of the settlement offer after summary judgment had been entered was invalid. *See Kroener v. Fla. Ins. Guar. Ass'n*, 63 So. 3d 914, 920 (Fla. 4th DCA 2011) ("[T]he trial court's grant of final summary judgment in favor of FIGA terminated FIGA's pending offer of judgment and precluded the Kroeners' ability to accept it.").[9]

VI. Conclusion

Insofar as the final summary judgment subsumes the order striking acceptance of the settlement offer, we affirm. The final summary judgment is otherwise reversed, and we remand for further proceedings consistent with this opinion. We also certify conflict with *Arce v. Citizens Property Insurance Co.*, 388 So. 3d 205 (Fla. 3d DCA 2024).

Affirmed in part, reversed in part, and remanded; conflict certified.

MORRIS and SMITH, JJ., Concur.

_____

Opinion subject to revision prior to official publication.

_____

[9] *Suarez Trucking FL Corp. v. Souders*, 350 So. 3d 38 (Fla. 2022), relied upon by SFR, is inapposite; *Suarez Trucking* did not involve acceptance of a settlement offer following an adverse judgment.